**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

CORNELIUS B. FAISON,                    :
                                        :
      Plaintiff,                     :
                                        :
v.                                      :        CASE NO.: 1:11-cv-10 (WLS)
                                        :
DONALSONVILLE HOSPITAL, INC.,           :
                                        :
      Defendant.                     :
_____    :

## <u>ORDER</u>

      Before the Court, without opposition, is Plaintiff Cornelius B. Faison's Motion for Attorneys' Fees. (Doc. 51.) For the reasons that follow, Faison's motion is **GRANTED**.

### I.  Procedural Background

      This action arose from Defendant Donalsonville Hospital's denial of Plaintiff Cornelius Faison's insurance benefits under an Employee Benefit Plan. After the denial, Faison filed suit under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* (ERISA), on the basis that the Hospital acted arbitrarily and capriciously in making its decision. On September 17, 2012, the Court entered judgment in favor of Faison. In its Order, the Court made the following findings of fact:

      Faison was a plan participant of the Donalsonville Hospital Inc. Employee Benefit Plan. On July 26, 2009, he sustained injuries after crashing his motorcycle into a tree while eluding a Georgia State Patrol Trooper. He was charged, and later convicted of, five misdemeanor violations related to his elusion from police.

      As a result of his injuries, Plaintiff amassed $481,783.48 in medical bills. To pay them, Faison made a claim with the Hospital, which denied the claim. The Hospital is a

sixty-five-bed general hospital in Seminole County, Georgia. It offers its employees "Employee and Dependent" medical insurance. The Hospital funds the plan with its own revenue and modest employee contributions. Less than 5 percent of the insurance funds come from employees. In 2010, the Hospital had around $2.3 million for insurance claims. It has reinsurance for claims exceeding $50,000.

The Hospital delegates initial claims administration to Paragon Benefits. Under the terms of the plan, participants may appeal adverse benefits determinations to the claims administrator. As the plan document instructs, Faison first submitted his claim to Paragon. Paragon denied his request for coverage on the following exclusion, found in Faison's plan:

> **(19) Illegal Acts**. Charges for services received as a result of Injury or Sickness occurring directly or indirectly, as a result of Serious Illegal Act, or a riot or public disturbance. For purposes of this exclusion, the term "Serious Illegal Act" shall mean any act or series of acts that, if prosecuted as a criminal offense, a sentence to a term of imprisonment in excess of one year could be imposed. It is not necessary that criminal charges be filed, or, if filed, that a conviction result or that a sentence of imprisonment for a term in excess of one year be imposed for this exclusion to apply.

In a letter dated August 10, 2010, counsel for Faison appealed Paragon's decision to the Plan Administrator. A few days after receiving counsel's letter, the Hospital's Benefits Committee met to consider the claim. The Benefits Committee makes final decisions on adverse benefit determinations. The committee is composed of Charles Orrick, the Hospital administrator; James Moody, the chief financial officer; and Herman Brookins, who is the chairman of the board of directors and describes himself as the de facto chief executive officer.

The meeting occurred one morning when CFO Moody approached Brookins and Orrick with Faison's appeal letter. At the time of the meeting, neither Brookins nor Or-

rick were familiar with Faison's case beyond, at most, having heard about it. Besides the appeal letter and the plan document, none of the Benefits Committee members had seen any documents or evidence associated with the accident. Moody had spoken with an unknown Paragon employee sometime after Paragon's decision via a telephone call. Based on that call, Moody understood the reason for Paragon's denial and told the employee he agreed with his or her decision

During their meeting, the committee reviewed the plan itself but they did not consider other documents. Committee members also discussed how Paragon had denied a claim for a plan participant who was injured during a legal motocross racing accident. Brookins recalled that he had felt that it would be important to treat similar claims alike. At that meeting, the Committee decided to deny Plaintiff's claim. The Committee did not meet again.

CFO Moody then contacted attorney Charles Stewart to draft a response to Plaintiff's appeal. Stewart was not involved in the hospital's initial decision. After the call, Stewart reviewed evidence and drafted a letter denying coverage, per Moody's request. As evidenced by Stewart's letter and committee members' testimony, the Hospital determined that Plaintiff was not entitled to benefits because his conduct fell under the plan's "Illegal Acts" exclusion.

Under these facts, the Court found the Hospital violated ERISA. The Court found the Hospital's decision was "de novo wrong" because the plan exclusion applied only to illegals acts that "if prosecuted as a criminal offense, a sentence to a term of imprisonment in excess of one year could be imposed." Given the singular use of the word "offense," the Court determined the Hospital could not simply add up Faison's misdemeanors to create a "serious illegal act." After finding the Hospital's interpretation

wrong, the Court proceeded in finding it unreasonable because the term was unambiguous. Additionally, the Hospital gave "surprisingly little consideration" to Faison's appeal and operated under a conflict of interest.

The Hospital appealed the Court's judgment, and the Eleventh Circuit affirmed.

After this Court's entry of judgment, Faison moved for attorneys' fees. He requests $55,170 on behalf of attorney Jerry Lumley for 183.9 hours worked at $300 an hour. He also requests $1,200 for co-counsel W. Kerry Howell for 4.8 hours at $250. The Hospital did not respond to the motion, and the time to do so has expired.

## II. Discussion

### A. Whether Faison is entitled to attorneys' fees

ERISA provides that "[i]n any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). A court has discretion to award attorneys' fees when the claimant has achieved "some degree of success on the merits." *Hardt v. Reliance Standard Ins. Co.*, 130 S. Ct. 2149, 2151 (2010) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983)). The Eleventh Circuit instructs district courts to consider five factors when evaluating a motion for attorney's fees under § 1132(g)(1):

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; (5) the relative merits of the parties' positions.

*Freeman v. Cont'l Ins. Co.*, 996 F.2d 1116, 1119 (11th Cir. 1993) (citing *McKnight v. S. Life & Health Ins. Co.*, 758 F.2d 1566, 1571–72 (11th Cir. 1985)). These factors "operate

only as a [guideline] to assist [district courts] in exercising their discretion' and as a 'nuclei of concerns that a court should address in applying section [1132(g)].'" *Byars v. Coca-Cola Co.*, 517 F.3d 1256, 1268 (11th Cir. 2008) (quoting *Iron Workers Local 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980)).

The Court finds these factors weigh in favor of Faison.

### 1. Bad Faith

The first factor, the degree of the hospital's culpability or bad faith, supports an award of attorneys' fees. In its Order on the Parties' motions for judgment, the Court found the Hospital abused its discretion by giving "surprisingly little consideration to [Faison's] appeal" and acting under a conflict of interest. (Doc 48 at 12.) The evidence in the case showed that the Benefits Committee denied Faison's appeal without considering evidence. The record also "suggest[ed] that the Benefits Committee had only a general understanding of the accident, based entirely on a conversation with a Paragon employee who had already decided to deny the claim." (*Id.* at 13.) Two members of the three-member committee appeared to rely almost entirely on the third to make the Committee's decision. Additionally, the Hospital, the plan administrator, paid the benefits from its own assets, creating a conflict of interest. These facts suggest the Hospital was at the very least culpable in its conduct.

### 2. Opposing party's ability to satisfy an award of attorney's fees.

The second factor asks the Court to consider the Hospital's ability to satisfy an award of attorneys' fees. This factor also weighs in favor of awarding fees. Faison requests $56,370 for two attorneys. The Hospital had $2.3 million for insurance claims in 2010. It has reinsurance for claims exceeding $50,000. There is no evidence to suggest the Hospital would not be able to pay Faison's fees.

### 3.  Deterrence

The Court next considers whether an award of attorneys' fees will deter other plan administrators from acting as found under similar circumstances.  The Court finds it would. The Eleventh Circuit has noted in another ERISA case that "the deterrent value of an award of attorneys' fees . . . is high" because "[i]f [the defendant] did not have to pay . . . attorneys' fees, it would only be liable for what it should have covered before this litigation commenced. With nothing to lose but their own litigation costs, other ERISA-plan sponsors might find it worthwhile to force underfinanced beneficiaries to sue them to gain their benefits or accept undervalued settlements." *National Cos. Health Benefit Plan v. St. Joseph's Hosp., Inc.,* 929 F.2d 1558, 1675 (11th Cir.1991), *abrogated on other grounds*, *Geissal v. Moore Med. Corp.*, 524 U.S. 74 (1998). Likewise, in this case, an award of attorneys' fees will discourage plan administrators from giving cursory review to a plan participant's appeal, at the risk of paying the benefits and a fee award.

### 4.  Whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself

Faison claims that "[w]hile [he] brought this case to recover benefits that were wrongfully denied to him, this case will benefit all participants and beneficiaries of the Hospital's Plan." Although this case may have some benefit to other plan participants, it neither involved other participants nor did it resolve a significant legal question. Instead, the case was strictly limited to Faison's claim for benefits. The Court analyzed that question under the well-established six-part approach for reviewing a plan administrator's decision. Therefore, the Court finds that this factor does not weigh in favor of granting attorneys' fees.

### 5.  The relative merits of the Parties' positions.

Finally, the fifth factor, the relative merits of the Parties' positions, weighs in favor of Faison. The Court determined that the Hospital's decision was not only wrong, but also an abuse of discretion. The Court found unpersuasive the Hospital's arguments. Therefore, Faison's positions had more merit than the Hospital's.

Because the Court finds that four of the five factors weigh in favor of attorneys' fees, the Court concludes that fees are warranted under 29 U.S.C. § 1132(g)(1). The Court now turns to whether the requested fees are reasonable.

### B. Reasonableness of Faison's fee request

In determining the appropriate amount of an award for attorneys' fees, the Court multiplies the number of hours reasonably expended on a case by the reasonable or customary hourly rate.  This amount, the "lodestar," may then be adjusted upward or downward in light of the factors identified in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989).[1]  The Court in *Blum v. Stenson*, 465 U.S. 886 (1984), held that most of the *Johnson* factors[2] will ordinarily be reflected in the lodestar itself, for

---

[1] The Eleventh Circuit has adopted as binding precedent all decisions issued by the former Fifth Circuit prior to October 1, 1981.  *Bonner v. City of Prichard*, 661 F. 2d 1206, 1209 (11th Cir. 1981) (en banc).

[2] Determination of a reasonable fee is based on consideration of the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974):

|      |                                                                                              |
|------|----------------------------------------------------------------------------------------------|
| 1.   | The time and labor expended;                                                                 |
| 2.   | The novelty and difficulty of the questions raised;                                          |
| 3.   | The skill required to properly perform the legal services rendered;                          |
| 4.   | The customary fee for like work;                                                             |
| 5.   | The attorney's opportunity costs in pressing the instant litigation;                         |
| 6.   | The fee is contingent or fixed;                                                              |
| 7.   | The time limitations imposed by the client or circumstances;                                 |
| 8.   | The amount in controversy and the results obtained;                                          |
| 9.   | The experience, reputation, and ability of the attorney;                                     |
| 10.  | The undesirability of the case within the legal community in which the suit arose;           |
| 11.  | The nature and length of the professional relationship between attorney and client; and      |
| 12.  | The attorneys' fees awards in similar cases.                                                 |

example, time and rate, rather than in an adjustment of the lodestar. Determination of a reasonable fee necessarily requires that a counsel for the prevailing party exclude from a fee request "hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

Faison requests $56,370 in fees for two attorneys, Jerry Lumley and K. Kerry Howell. Lumley served as lead counsel for Faison, and Howell assisted on several occasions. According to Lumley's affidavit, $300 an hour is a reasonable fee for an attorney of his experience and ability and for the nature of the work performed. Likewise, Lumely believes $250 is an appropriate fee for Howell. Lumley has practiced law in Macon, Georgia, since 1985. Howell was admitted to the bar in 1991. Lumley has taken a number of ERISA cases since that time. He has a good reputation among the professional community for these types of cases, as evidenced by the fact that all of his ERISA cases came from referrals.

Faison also provided an affidavit from Bradley G. Pyles, a partner with the law firm Westmoreland, Patterson, Moseley & Hinson LLP, in Macon, Georgia. Pyles' practice focuses primarily on employee benefit and insurance issues. Most of his recent work has involved ERISA claims. He believes, based on the nature of the case and Lumley's and Howell's experiences, that $300 and $250 are reasonable fees.

In an invoice, Lumley states that he worked 183.9 hours over the course of two years to litigate Faison's case. His invoice includes time spent preparing briefs, attending depositions, communicating with opposing counsel and his client, among other things. Howell spent 4.8 hours reviewing and revising some of Lumley's work.

After a careful review of the record and taking account of the nature of the claim, the Court concludes that the amount of fees requested are reasonable and appropriate for the attorneys' extensive experience, the nature of the case, and the time spent obtaining a successful result. In particular, $300 and $250 are reasonable hourly rates for complexity of this case and the attorneys' respective abilities and experiences. Additionally, 183.9 hours is not unreasonable for a two-year case involving complex law and facts. Therefore, Faison's motion is **GRANTED** in the amount of $56,370.

## III.   Conclusion

Faison's Motion for Attorneys' Fees (Doc. 51) is **GRANTED**. The Hospital is **ORDERED** to pay Lumley $55,170 and Howell $1,200.

**SO ORDERED**, this  29th  day of August 2013.

 /s/ W. Louis Sands
**THE HONORABLE W. LOUIS SANDS,**
**UNITED STATES DISTRICT COURT**